## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| DR. DAMIEN D. MAHARAJ, Derivatively on behalf of GATOS SILVER, INC., <br><br> Plaintiff, <br><br> v. <br><br> JANICE STAIRS, KARL HANNEMAN, DAVID PEAT, CHARLES HANSARD, IGOR GONZALES, ALI ERFAN, DANIEL MUÑIZ QUINTANILLA, and STEPHEN ORR, <br><br> Defendants, <br><br> - and - <br><br> GATOS SILVER, INC., <br><br> Nominal Defendant | Case No.: <br><br><br> **VERIFIED SHAREHOLDER** <br> **DERIVATIVE COMPLAINT** <br><br><br> JURY TRIAL DEMANDED |

Plaintiff Dr. Damien D. Maharaj ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant Gatos Silver, Inc. ("herein referred to as "Gatos" or the "Company"), against its Board of Directors (the "Board") and certain of its executive officers seeking to remedy the Individual Defendants' (defined below) breaches of fiduciary duties and violations of federal law. Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Company's publicly available documents, including the allegations of the class action complaint filed in a securities class action, captioned *Bilinsky v. Gatos Silver, Inc., et al,* Case No.: 1:22-cv-00453 (D. Colo. Feb. 22, 2022) (the "Securities Class Action"), conference call transcripts and announcements, filings with the United States Securities

and Exchange Commission (the "SEC"), press releases published by and regarding Gatos, legal filings, news reports, securities analysts' reports about the Company, and other publicly available information.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought on behalf of Gatos against certain officers and members of the Company's Board for breaches of their fiduciary duties between at least March 29, 2021 and January 25, 2022 (the "Relevant Period") and violations of the federal securities laws caused by the issuance of materially false and misleading statements in connection with, among other things, the Company's initial public offering (the "IPO"). These statements have exposed the Company to massive class-wide liability as well as the expenditure of substantial defense costs in connection with the Securities Class Action, as set forth below.

2.      Gatos is a mining company that primarily focuses on the production of silver and zinc. The Company's primary operations involve the exploration and development of the Cerro Los Gatos ("CLG") mine in Chihuahua, Mexico, in collaboration with Dowa Metals and Mining Co., Ltd. (the "Los Gatos Joint Venture" or "LGJV").

3.      On October 1, 2020, the Company filed a Registration Statement with the SEC in connection with the IPO. After several amendments, the Registration Statement was declared effective October 27, 2020. On October 29, 2020, Gatos filed its prospectus on Form 424B4 with the SEC which was incorporated into the Registration Statement. In the IPO, the Company sold roughly 24,644,500 shares of its common stock at a price of $7.00 per share, generating net proceeds of approximately $156.1 million.

4.      The Registration Statement heavily cited the mineral reserve estimates and the economic analysis the NI 43-101 Technical Report: Los Gatos Project, Chihuahua, Mexico,"

prepared by Tetra Tech Inc., dated July 1, 2020 (the "Los Gatos Technical Report"), which was appended as an exhibit to the Registration Statement. While warning that the estimates contained in the Los Gatos Technical Reports were "only estimates," the Individual Defendants represented that the commencement of mining operations would allow the Company to assess the accuracy of such estimates.

5.      Throughout the Relevant Period, the Individual Defendants (defined below) issued and/or caused to be issued, materially false and misleading statements that the activities and results at the CLG mine "would not result in a material change to the information contained in the Los Gatos Technical Report," thereby supporting the purported reliability of the estimates in the Los Gatos Technical Report.

6.      On January 25, 2022, after the market closed, however, the Company disclosed "errors in the [LGJV] technical report . . . , as well as indications that there is an overestimation in the existing resource model." The Company further revealed that it had overestimated the metal content in the CLG mine by 30% to 50%.

7.      On this news, the price of Gatos Silver stock declined a staggering 69% in one day, closing at $3.17 per share on January 26, 2022 on unusually heavy trading volume.

**8.**      As a result of the foregoing, the Securities Class Action was filed against the Company and certain current and former officers and members of the Board, exposing the Company to massive class-wide liability.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Securities Exchange Act") (15 U.S.C. §§ 78j(b) and 78u-4(f)), and Section 11(f)

of the Securities Act of 1933 (the "Securities Act") (15 U.S.C. § 77k(f)(1)), and Section 21D of the Exchange Act (15 U.S.C. §).

10.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

11.     This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

12.     In connection with the acts, conduct and other wrongs complained of herein, the Individual Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

13.     Venue is proper in this District pursuant to Section 27(a) of the Securities Exchange Act and 28 U.S.C. §1391(b)(1), as Gatos is incorporated in the State of Delaware, and a substantial portion of the acts and omissions alleged herein, including the dissemination of materially false and misleading information, occurred in this District.

## **PARTIES**

14.     Plaintiff holds shares of Gatos and has been a continuous holder of the Company's common shares at all times relevant hereto.

15.     Nominal Defendant Gatos is a Delaware corporation with its principal executive offices located at 8400 E Crescent Pkwy Ste 600, Greenwood Village, Colorado 80111. Gatos's common stock is traded on the New York Stock Exchange ("NYSE") under the ticker symbol "GATO."

16.     Defendant Janice Stairs ("Stairs") has served as a member of the Board since October 2019 and as Chair of the Board since October 2020. Defendant Stairs serves as a member

of the Audit Committee. According to the Company's public filings, Defendant Stairs received $313,054 in 2021 in compensation from the Company.

17.     Defendant Karl Hanneman ("Hanneman") has served as a member of the Board since October 2019 and serves as Chair of the Compensation and Nominating Committee and as a member of the Technical, Environmental, Health and Safety Committee. According to the Company's public filings, Defendant Hanneman received $275,637 in 2021 in compensation from the Company.

18.     Defendant David Peat ("Peat") has served as a member of the Board since September 2011 and serves as Chair of the Audit Committee. According to the Company's public filings, Defendant Peat received $280,274 in 2021 in compensation from the Company.

19.     Defendant Charles Hansard ("Hansard") has served as a member of the Board since October 2020 and serves as a member of the Audit Committee. According to the Company's public filings, Defendant Hansard received $235,242 in 2021 in compensation from the Company.

20.     Defendant Igor Gonzales ("Gonzales") has served as a member of the Board since June 2020 and serves as Chair of the Technical, Environmental, Health and Safety Committee and as a member of the Compensation and Nominating Committee. According to the Company's public filings, Defendant Gonzales received $251,519 in 2021 in compensation from the Company.

21.     Defendant Ali Erfan ("Erfan") has served as a member of the Board since May 2019 and serves as a member of the Compensation and Nominating Committee. According to the Company's public filings, Defendant Erfan received $262,001 in 2021 in compensation from the Company.

22.     Defendant Daniel Muñiz Quintanilla ("Quintanilla") has served as a member of the Board since April 2021 and serves as a member of the Technical, Environmental, Health and

Safety Committee. According to the Company's public filings, Defendant Quintanilla received $152,490 in 2021 in compensation from the Company.

23.     Defendant Stephen Orr ("Orr") served as a member of the Board from May 2011 and as Gatos's Chief Executive Officer ("CEO") from June 2011 until his departure from the Company in April 2022. According to the Company's public filings, Defendant Orr received $2,055,335 in 2021 in compensation from the Company.

24.     The defendants identified in paragraphs 15 through 22 are collectively referred to herein as the "Individual Defendants."

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

25.     By reason of their positions as officers, directors and/or fiduciaries of Gatos, and because of their ability to control the business and corporate affairs of the Company, at all relevant times, the Individual Defendants owed Gatos and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.

26.     The Individual Defendants were required to act in furtherance of the best interests of Gatos and its shareholders so as to benefit all shareholders equally and not in furtherance of their own personal interest or benefit.

27.     Each director and officer of the Company owes to Gatos and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

28.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Gatos, were able to and did, directly and/or indirectly, exercise control

over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Gatos, each of the Individual Defendants had knowledge of material non-public information regarding the Company. To discharge their duties, the officers and directors of Gatos were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company. By virtue of such duties, the officers and directors of Gatos were required to, among other things:

    a.  Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

    b.  Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable district and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

    c.  Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

    d.  When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

29.    The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Gatos.

30.    Each of the Individual Defendants breached his or her fiduciary duties as alleged

herein, both individually and in concert with the other Defendants.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

31.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

32.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment.

33.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully, recklessly, or negligently to conceal material facts, fail to correct such misrepresentations, and violate applicable laws.

34.     In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants, who are directors or officers of Gatos, was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

35.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her

overall contribution to and furtherance of the wrongdoing.

36.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Gatos and at all times acted within the course and scope of such agency.

### GATOS'S CODE OF BUSINESS CONDUCT AND ETHICS

37.     Gatos's Code of Business Conduct and Ethics (the "Code of Conduct") begins with a commitment "***to high standards of ethical conduct and integrity in everything that we do***" (emphasis in original).[1]

38.     The Code of Conduct applies to all "directors, officers, and employees," but "directors, officers and other managers, in particular, have a special responsibility to lead according to the standards in the Code." Violations of the Code of Conduct may result in "prompt disciplinary action, up to and including dismissal for cause."

39.     In a section titled "**Our Corporate Responsibility**" (emphasis in original), the Code of Conduct states, in relevant part: "You should comply with all applicable laws, rules and regulations wherever we do business."

40.     In a section titled "**We Abide by the Law**" (emphasis in original), the Code of Conduct states, in relevant part:

> ***Books and Records.*** Gatos is required to make sure that its books and records accurately and fairly represent transactions and dispositions of our assets in reasonable detail. It is a violation of company policy, and possibly illegal, for any employee to cause our books and records to be inaccurate in any way. You must never create or participate in the creation of records that are misleading or artificial, and should cooperate fully with our internal and independent auditors and management in ensuring that we fulfill our responsibilities. Any attempt to unduly or fraudulently influence, coerce, manipulate or mislead the Company or its independent or internal auditors regarding our financial statements, accounting practices or internal controls is a violation of the Code. In addition, you must strictly adhere to the following requirements:

---

[1] Unless indicated otherwise, all emphasis in this Complaint is added.

*Accurate and Timely Disclosure of Information.* Gatos is committed to full compliance with all relevant disclosure requirements applicable to a publicly traded company, and has implemented disclosure controls and procedures to assure that its public disclosures will be timely, compliant and otherwise full, fair, accurate and understandable. Those who are responsible for preparing Gatos' public disclosures or who provide information as part of that process, are responsible for ensuring that such disclosures are complete, accurate and comply with those disclosure controls and procedures.

41.     The Code of Conduct ends with a Form of Acknowledgement to be Signed by Directors and Executive Officers, which includes the commitment to "[a]ct in good faith, responsibly, with due care, competence and diligence, and without misrepresenting material facts or circumstances."

## GATOS'S AUDIT COMMITTEE CHARTER

42.     Gatos's Audit Committee Charter states that the purpose of the Audit Committee is to "assist the Board of Directors in discharging its responsibility relating to . . . Financial Reporting and Audit . . . [and] Financial Oversight."

43.     In a section titled "**Financial Reporting and Audit**" (emphasis in original), the Audit Committee Charter states that the Audit Committee shall:

[O]versee the Financial Reporting and Audit functions of the Company including:

(i) the integrity of the Company's financial statements and financial reporting process and the Company's systems of internal accounting and financial controls;

* * *

(v) the compliance by the Company with legal and regulatory requirements relating to financial, accounting, auditing and related matters;
(vi) the implementation and effectiveness of the Company's disclosure controls and procedures and internal control over financial reporting;
(vii) the prevention and detection of fraudulent activities.

44.     In a subsection titled "*Oversight of Internal Control over Financial Reporting*" (emphasis in original), the Audit Committee charter states, in relevant part:

10

The Committee shall review with management, including the Chief Executive Officer and Chief Financial Officer, and the independent auditors, the Company's overall system of internal control, including management's annual assessment of the Company's internal control over financial reporting and the related report issued by the independent auditors. The Committee shall also review with management, including the Chief Executive Officer and Chief Financial Officer, and the independent auditors:

    (i)    any significant deficiencies and material weaknesses in the design or operation of the Company's internal control over financial reporting that are reasonably likely to affect the Company's ability to record, process, summarize and report financial information;

    (ii)    any fraud (regardless of materiality) involving management or other employees having a significant role in internal control over financial reporting; and

    (iii)    changes in the Company's internal control over financial reporting during the most recent fiscal quarter that have materially affected, or are reasonably likely to materially affect, such internal control over financial reporting.

45. In a subsection titled "*Review of Disclosure Controls and Procedures*" (emphasis in original), the Audit Committee Charter states:

The Committee shall review with the Chief Executive Officer and the Chief Financial Officer the Company's disclosure controls and procedures and shall review periodically, but in no event less frequently than quarterly, management's conclusions about the effectiveness of such disclosure controls and procedures, including any significant deficiencies in, or material non-compliance with, such disclosure controls and procedures.

46. In a subsection titled "*Review of Annual SEC Filings*" (emphasis in original), the Audit Committee Charter states, in relevant part:

The Committee shall review with management and the independent auditors the financial information to be included in the Company's Annual Report on Form 10-K (or the annual report to stockholders if distributed prior to the filing of the Form 10-K) and the Company's filings with Canadian securities regulators, including the disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations," their judgment about the quality, not just acceptability, of accounting principles, the reasonableness of significant judgments made in the preparation of the financial statements, the clarity of the disclosures therein and the adequacy of internal controls.

47. In a subsection titled "*Review of Quarterly Filings*" (emphasis in original), the

Audit Committee Charter states:

> The Committee shall review and discuss with management and the independent auditors the quarterly financial information to be included in the Company's Quarterly Reports on Form 10-Q and corresponding filings with Canadian securities regulators, including the disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations," and shall discuss any other matters required to be communicated to the Committee by the independent auditors under applicable standards of the PCAOB (United States) and corresponding Canadian requirements or applicable law or listing standards.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company*

48.     Gatos is a U.S.-based mining company that primarily focuses on the production of silver and zinc. The Company's primary operations involve the exploration and development of the CLG mine in Chihuahua, Mexico, in collaboration with Dowa Metals and Mining Co., Ltd.

49.     On October 1, 2020, Gatos filed a Registration Statement with the SEC in connection with the IPO. After several amendments, the Registration Statement was declared effective October 27, 2020. On October 29, 2020, Gatos filed its prospectus on Form 424B4 with the SEC which was incorporated into the Registration Statement. The Registration Statement was signed by Defendants Orr, Stairs, Erfan, Hanneman, Gonzales, and Peat.

50.     A technical report on the LGJV was attached to the Registration Statement as an exhibit (the "Los Gatos Technical Report") and was cited throughout the Registration Statement as support for the Company's forecasts and projections. Accordingly, investors relied heavily on the accuracy of the Los Gatos Technical Report in deciding whether to purchase and hold shares of Gatos stock.

### *The Registration Statement*

51.     The Registration Statement stated:

The Los Gatos Technical Report, which has an effective date of July 1, 2020, estimates that the deposit contains 9.6 million diluted tonnes of proven and probable mineral reserves (or 5.0 million diluted tonnes of proven and probable mineral reserves on a 51.5% basis), with 6.4 million diluted tonnes of proven mineral reserves (or 3.3 million diluted tonnes of proven mineral reserves on a 51.5% basis) and 3.3 million diluted tonnes of probable mineral reserves (or 1.7 million diluted tonnes of probable mineral reserves on a 51.5% basis). Average proven and probable mineral reserve grades are 306 g/t silver, 0.35 g/t gold, 2.76% lead and 5.65% zinc.

52.    With respect to the mineral reserves in the CLG mine, the Registration Statement

provided the following table:

*Cerro Los Gatos Mineral Reserve Estimates as of the Effective Date of the Los Gatos Technical Report*

| Zone | Category | Tonnes (millions; 100% basis) | Tonnes (millions; 51.5% basis) | Ag (g/t) | Au (g/t) | Pb (%) | Zn (%) |
|---|---|---|---|---|---|---|---|
| Northwest Zone | Proven | 2.6 | 1.3 | 359 | 0.43 | 3.09 | 5.88 |
| | Probable | 0.5 | 0.3 | 333 | 0.34 | 2.86 | 5.88 |
| Central Zone | Proven | 3.8 | 1.9 | 314 | 0.31 | 2.55 | 5.32 |
| | Probable | 1.8 | 0.9 | 299 | 0.44 | 2.32 | 5.82 |
| Southeast Zone | Proven | 0.0 | 0.0 | 148 | 0.16 | 3.69 | 7.23 |
| | Probable | 0.6 | 0.3 | 148 | 0.16 | 3.69 | 7.23 |
| Southeast Zone Block 2 | Probable | 0.4 | 0.2 | 118 | 0.17 | 3.11 | 4.16 |
| **Total (Proven)** | | **6.4** | **3.3** | **332** | **0.36** | **2.77** | **5.55** |
| **Total (Probable)** | | **3.3** | **1.7** | **254** | **0.34** | **2.74** | **5.86** |
| **Total (Proven & Probable)** | | **9.6** | **5.0** | **306** | **0.35** | **2.76** | **5.65** |

53.    The Registration Statement further touted the financial prospects of the LGJV:

Once fully operational, the Cerro Los Gatos Mine is expected to generate average [life-of-mine] unlevered, after-tax free cash flow of approximately $76 million per year on a 100% basis (or approximately $39 million per year on a 51.5% basis). Projected attributable net revenue and free cash flow, as set forth in the Los Gatos Technical Report, are presented below:

*Projected Net Revenue (in millions)*



*Projected Unlevered Free Cash Flow (in millions)*



54.     While warning that the calculations in the Los Gatos Technical Report were "only estimates," the Individual Defendants represented that the commencement of mining operations would allow the Company to assess the accuracy of such estimates:

> ***Mineral reserve and mineral resource calculations at the Cerro Los Gatos Mine and the Los Gatos District are only estimates.***
>
> Calculations of mineral reserves the Cerro Los Gatos Mine and of the mineral resources at the Los Gatos District are only estimates and depend on geological interpretation and statistical inferences or assumptions drawn from drilling and sampling analysis, which might prove to be materially inaccurate. There is a degree of uncertainty attributable to the calculation of mineral reserves and mineral resources. ***Until mineral reserves and mineral resources are actually mined and processed, the quantity of metal and grades must be considered as estimates only and no assurance can be given that the indicated levels of metals will be produced.*** In making determinations about whether to advance any of our projects to development, we must rely upon estimated calculations for the mineral reserves and mineral resources and grades of mineralization on our properties.
>
> The estimation of mineral reserves and mineral resources is a subjective process that is partially dependent upon the judgment of the persons preparing the estimates. The process relies on the quantity and quality of available data and is based on knowledge, mining experience, statistical analysis of drilling results and industry practices. Valid estimates made at a given time may significantly change when new information becomes available.

(Emphasis in original).

55.     On December 8, 2020, Gatos issued a press release announcing its third quarter 2020 financial results. The press release stated, in relevant part:

> The Company reported the following key highlights through September 30, 2020:
>
> - Rapid recommissioning of the Cerro Los Gatos ("CLG") mine following Mexico's mandated COVID-19 project suspension,
> - Strong operational and financial results from CLG following a 45-day temporary suspension. The CLG mine was recommissioned in late May

2020 with an optimized plan averaging a monthly production rate of 1,750 tpd to September 30, 2020,

- Record production from the CLG mine - 453,392 ore tonnes were mined in the first nine months of 2020,
- Record silver, zinc, and lead metal recoveries at the CLG processing plant during the third quarter 2020 - silver recovery approximated the Los Gatos Technical Report estimated recoveries at 85.1%, while zinc and lead recovery exceeded forecast at 73.9% and 87.3%, respectively,
- Record quarterly cash flow generation at the Los Gatos Joint Venture ("LGJV") in the third quarter 2020, and
- Applied for public listing on the NYSE and TSX and successfully completed an initial public offering ("IPO") of 24,644,500 shares, raising gross proceeds of US $172.5 million in the fourth quarter 2020.

56.     On December 9, 2020, the Company filed its quarterly report on Form 10-Q for the fiscal quarter ending September 30, 2020. That filing stated that the Company's "disclosure controls and procedures were effective as of September 30, 2020."

***False and Misleading Statements Issued During the Relevant Period***

57.     The Relevant Period begins on March 29, 2021, when Gatos issued a press release announcing its fourth quarter and full year 2020 financial results and its 2021 projections. That press release stated, in relevant part:

The Company reported the following key highlights for 2020:

- Record production of 652,739 ore tonnes from the Los Gatos Joint Venture ("LGJV") owned Cerro Los Gatos ("CLG") mine;
- Record silver, gold, zinc and lead metal recoveries at the CLG processing plant by the end of 2020 ***with silver, gold, zinc and lead recoveries exceeding plan during the fourth quarter***;
- Designed 2,500 tpd production rate achieved at the CLG mine by end of 2020;
- Two consecutive profitable quarters to end 2020;
- Gross proceeds of $172.5 million raised in the fourth quarter in initial public offering ("IPO"); and
- 27,000-meter exploration program commenced at CLG in December.

(Emphasis added).

58.     That same day, Gatos filed its annual report on Form 10-K (the "2020 10-K"). Under "Risk Factors," the 2020 10-K warned that "mineral reserve and mineral resource calculations at the CLG and the Los Gatos District are only estimates and actual production results may vary significantly from the estimates . . .." However, the 2020 10-K also stated that production activity at the CLG mine supported the purported reliability of the estimates in the Los Gatos Technical Report:

> References to the "Los Gatos Technical Report" are to the "NI 43-101 Technical Report: Los Gatos Project, Chihuahua, Mexico," prepared by Tetra Tech Inc. ("Tetra Tech"), dated July 1, 2020, which was prepared in accordance with the requirements of subpart 1300 of Regulation S K (the "SEC Mining Modernization Rules") and Canadian National Instrument 43-101 — Standards of Disclosure for Mineral Projects ("NI 43-101"). The Los Gatos Technical Report was filed as Exhibit 96.1 to our Registration Statement on Form S-1 (File No. 333-249224), filed with the SEC on October 1, 2020. The mineral resource estimates contained in the Los Gatos Technical Report have an effective date of September 6, 2019 and have not been updated since that time. ***We believe that activity at the CLG subsequent to the effective date of the mineral resource estimates would not result in a material change to the information contained in the Los Gatos Technical Report.*** The mineral reserve estimates and the economic analysis contained in the Los Gatos Technical Report have an effective date of July 1, 2020 and exclude 655,746 tonnes of mineral reserves that have been mined through June 30, 2020. Subsequent to July 1, 2020, 363,857 tonnes of material have been mined through December 31, 2020, ***which we believe would not result in a material change to the information contained in the Los Gatos Technical Report***.

(Emphasis added). Indeed, the 2020 10-K stated that activities and the results at CLG "would not result in a material change to the information contained in the Los Gatos Technical Report" no less than eighteen (18) times in the 2020 10-K.

59.     The 2020 10-K also reaffirmed that the Company's "disclosure controls and procedures were effective as of December 31, 2020."

60.     On May 7, 2021, the Company issued a press release announcing its first quarter 2021 financial results (the "1Q2021 Press Release"). That press release stated, in relevant part:

Key Highlights:

- Repurchased an additional 18.5% interest in the Los Gatos Joint Venture ("LGJV"), increasing the Company's LGJV interest to 70%;
- Extinguished the $60 million LGJV Working Capital Facility of which Gatos Silver's pro-rata portion was $42 million;
- Mined 209,832 tonnes of ore from the Cerro Los Gatos ("CLG") mine;
- Achieved strong metal recoveries at the CLG processing plant with silver recovery averaging 85%, lead recovery averaging 87% and zinc recovery averaging 71%;

The 1Q2021 Press Release further quoted Defendant Orr, then-CEO, as stating:

> Q1 established a strong foundation for 2021 operations. The CLG Project provided record revenue for the LGJV and the mine operated at its designed 2,500 tpd throughput for each operating day. . . . So far, in the second quarter of 2021, the ***CLG project is performing above expectation as development during Q1 allowed CLG to access higher grade ore zones, yielding above budget metal production and revenue***.

(Emphasis added).

61.    The same day, Gatos filed its quarterly report on Form 10-Q for the fiscal quarter ending March 31, 2021, which reaffirmed that the Company's "disclosure controls and procedures were effective as of March 31, 2021."

62.    On July 7, 2021, Gatos issued a press release, touting the Company's operating performance at the CLG mine:

> Gatos Silver achieved strong operating performance in Q2 at the CLG mine which produced a quarterly record of 240,047 ore tonnes. The plant achieved record throughput processing 230,656 tonnes, exceeding the first quarter 2021 ("Q1") performance by 13%.

> [Table omitted]

> Stephen Orr, Chief Executive Officer, stated "CLG's impressive Q2 mine and plant performance produced record results. Mine development during Q2 accessed the expected higher-grade ore forecast to be mined during 2021 and the plant production averaged a record 2,535 tonnes per day, above the design capacity of 2,500 tonnes per day. ***Record recoveries for silver, lead and zinc achieved in the quarter were also well above design.*** The higher tonnage and ore grades combined with the plant's higher throughput and metals recoveries yielded record metals production. As demonstrated by our excellent Q2 performance, we are progressing well against our 2021 production guidance."

(Emphasis added).

63.     On August 9, 2021, Gatos issued a press release announcing the Company's second quarter 2021 financial results (the "2Q2021 Press Release"). That press release stated, in relevant part:

**Key Highlights:**

- Achieved record quarterly net income of $13.5 million;
- ***Produced a quarterly record of 2.1 million ounces of silver from the Los Gatos Joint Venture ("LGJV") Cerro Los Gatos ("CLG") mine, as well as record lead and zinc production based on record throughput and recoveries***;
- Achieved record quarterly by-product All-In Sustaining Cost ("AISC") of $12.63 per ounce of payable silver
- Achieved record LGJV plant throughput of 230,656 tonnes (averaging 2,535 tonnes per day), exceeding first quarter 2021 by 13% and above design capacity;

(Emphasis added).

64.     The same day, Gatos filed its quarterly report on Form 10-Q for the fiscal quarter ending June 30, 2021, again affirming that the Company's "disclosure controls and procedures were effective as of June 30, 2021."

65.     On November 8, 2021, the Company issued a press release announcing its third quarter 2021 financial results (the "3Q2021 Press Release"). The 3Q2021 Press Release stated, in relevant part:

**Key Highlights:**

- Achieved record processing throughput of 234,054 tonnes, averaging 2,544 tonnes per day ("tpd") exceeding the 2,500 tpd design capacity at its 70%-owned Cerro Los Gatos ("CLG") mine;
- ***Achieved strong metal recoveries at CLG with silver recovery averaging 89%, lead recovery averaging 91% and zinc recovery averaging 74%***;

(Emphasis added). The 3Q2021 Press Release further stated:

LGJV sales for the three and nine months ended September 30, 2021, were $57.0 million and $178.3 million, respectively. These sales, compared to the same periods

in 2020, increased primarily as a result of higher metals prices, ***higher production*** and the two-month Mexican government mandated suspension of all non-essential operations during April and May 2020.

(Emphasis added).

66.     That same day, Gatos field its quarterly report on Form 10-Q for the fiscal quarter ending September 30, 2021, reiterating that the Company's "disclosure controls and procedures were effective as of September 30, 2021."

67.     On January 10, 2022, Gatos issued a press release announcing the Company's fourth quarter 2021 financial results. That press release stated:

> Silver production in Q4 was 2.3 million ounces and increased 35% compared to the third quarter 2021 ("Q3"), due primarily to higher mined silver ore grades as well as higher throughput and recoveries. Lead and zinc production in Q4 were slightly below Q3 levels, due to lower mined lead and zinc ore grades. CLG's 2021 silver production of 7.6 million ounces exceeded the Company's guidance of 7.4 million ounces. Zinc and lead production of 50 million and 40 million pounds, respectively, were both consistent with the Company's 2021 guidance range.
>
> CLG achieved record throughput in Q4 totaling 241,397 tonnes, exceeding Q3 throughput by 3.1%. For 2021, 909,586 tonnes were processed, a 36% increase compared to 2020, which included a 45-day pandemic-related temporary suspension of plant operations.
>
> ***CLG achieved record silver recovery during Q4, with recoveries for silver, lead and zinc continuing to exceed design rates.***

(Emphasis added).

68.     The statements identified in ¶¶ 56-73, that were issued and/or caused to be issued by the Individual Defendants. were materially false and misleading and omitted to state material adverse facts necessary to make the statements not misleading. The Los Gatos Technical Report contained material errors that caused an overestimation of metal content in the CLG mine by 30% to 50%, and the mineral reserve estimates underlying much of the Company's forecasts were overstated by as much as 50%. Therefore,  actual results of the activities at the CLG mine did not

support the purported reliability of the estimates in the Los Gatos Technical Report, and the Individual Defendants' positive statements regarding the Company's business, operations, and prospects lacked a reasonable basis.

***The Truth Emerges***

69.     On January 25, 2022, after the market closed, Gatos disclosed "errors in the [LGJV] technical report . . . , as well as indications that there is an overestimation in the existing resource model." The Company further revealed that it had overestimated the metal content in the CLG mine by 30 to 50%. The Company's press release further stated:

> During the Company's resource and reserve update process for the Los Gatos Joint Venture ("LGJV"), which included a detailed reconciliation of recent production performance, the Company concluded that there were errors in the technical report entitled "Los Gatos Project, Chihuahua, Mexico" with an effective date of July 1, 2020 (the "2020 Technical Report"), as well as indications that there is an overestimation in the existing resource model.
>
> On a preliminary basis, the Company estimates a potential reduction of the metal content of CLG's mineral reserve ranging from 30% to 50% of the metal content remaining after depletion. Since the 2020 Technical Report, depletion is 1.3 million tonnes grading 284 g/t silver, 3.9% zinc, 2.3% lead and 0.3 g/t gold that has been processed from July 1, 2020 to December 31, 2021. At this time, the Company cannot accurately quantify the exact magnitude of the reduction, and ***the mineral resource and reserve estimates in the 2020 Technical Report should not be relied upon.***
>
> The Company is working with independent engineering consultants to better understand the magnitude of the overestimation, including conducting a detailed reconciliation of production to previous models and reserve calculation estimates, as well as creating a new Life of Mine ("LOM") plan. The Company is working expeditiously to complete this reconciliation. Given the complex nature of the reconciliation, Gatos Silver anticipates that it will complete its work in the second half of 2022.

(Emphasis added).

70.     On this news, the price of Gatos's stock declined 69% in just one day, closing at $3.17 per share on January 26, 2022, on unusually heavy trading volume. While the price of

Gatos's stock was materially inflated throughout the Relevant Period due to the Individual Defendants' false and misleading statements, the disclosure on January 25, 2022 caused the Company's share price to fall to less than half of the $7.00 per share IPO price.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

71.     Plaintiff brings this action derivatively for the benefit of Gatos to redress injuries suffered and to be suffered as a proximate result of the Individual Defendants' breaches of fiduciary duties and other violations of law.

72.     Plaintiff will adequately and fairly represent the interests of Gatos and its stockholders in enforcing and prosecuting its rights.

73.     Plaintiff is an owner of Gatos common stock and has been a continuous holder of the Company's common shares at all relevant times.

74.     At the time this action was commenced, the eight-member Board was comprised of Defendants Stairs, Hanneman, Peat, Hansard, Gonzales, Erfan, and Quintanilla, along with Dale Andres, who succeeded Defendant Orr as Gatos's CEO in April 2022 and is not a party to this action. Accordingly, Plaintiff is only required to show that four Directors cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. As set forth below, all of the Board's current directors, and if not all, at least seven, are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have been a futile act.

75.     The Individual Defendants, together and individually, violated and breached their fiduciary duties of candor, good faith, and loyalty. Specifically, the Individual Defendants

knowingly approved and/or permitted the wrongs alleged herein and participated in efforts to conceal those wrongs. The Individual Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

76.     The Individual Defendants either knowingly or recklessly issued or caused the Company to issue the materially false and misleading statements alleged herein. The Individual Defendants knew of the falsity of the misleading statements at the time they were made. As a result of the foregoing, the Individual Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

77.     As members of the Board charged with overseeing the Company's affairs, each of the Individual Defendants had knowledge, or the fiduciary obligation to inform themselves, of information pertaining to the Company's core operations and the material events giving rise to these claims. Specifically, as Board members of Gatos, the Individual Defendants knew, or should have known, the material facts surrounding the Los Gatos Joint Venture and the mineral reserves in the Cerro Los Gatos mine.

78.     Moreover, the Individual Defendants willfully ignored, or recklessly failed to inform themselves of, the obvious problems with the Company's internal controls, practices, and procedures, and failed to make a good faith effort to correct the problems or prevent their recurrence.

79.     Defendants Peat, Stairs, and Hansard are not disinterested or independent, and therefore, are incapable of considering a demand because they serve as members of the Audit

Committee and, pursuant to the Audit Committee Charter, were specifically charged with the responsibility to assist the Board in fulfilling its oversight responsibilities related to, *inter alia*, public disclosure requirements. Throughout the Relevant Period, however, these Defendants breached their fiduciary duties to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding the mineral reserves in the CLG mine and the adequacy of the Company's internal controls as alleged above. Therefore, Defendants Peat, Stairs, and Hansard cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihood.

80.     Additionally, each of the directors received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

81.     The Individual Defendants, as members of the Board, were and are subject to the Company's Code of Conduct. The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the Individual Defendants to also adhere to Gatos's standards of business conduct. The Individual Defendants violated the Code of Conduct because they knowingly or recklessly engaged in and participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. Because the Individual Defendants violated the Code of Conduct, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

82.     Furthermore, demand in this case is excused because the Individual Defendants derive substantial revenue from the Company, control the Company, and are indebted to each other. These conflicts of interest precluded the Individual Defendants from adequately monitoring

the Company's operations and internal controls and calling into question the Individual Defendants' conduct. Thus, any demand on the Individual Defendants would be futile.

83.     The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the directors can claim exculpation from their violations of duty pursuant to the Company's charter. As a majority of the directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein. They cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

84.     The acts complained of herein constitute violations of fiduciary duties owed by Gatos's officers and directors, and these acts are incapable of ratification.

85.     The Individual Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds *i.e.*, monies belonging to the stockholders of Gatos. If there is a directors' and officers' liability insurance policy covering the Individual Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Individual Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Individual Defendants were to sue themselves or certain officers of Gatos, there would be no directors' and officers' insurance protection. Accordingly, the Individual Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the

Company to effectuate a recovery. Thus, demand on the Individual Defendants is futile and, therefore, excused.

86.     If there is no directors' and officers' liability insurance, then the directors will not cause Gatos to sue the Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event as well.

87.     Thus, for all of the reasons set forth above, all of the directors, and, if not all of them, certainly at least eight of them, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## COUNT I

### Claim for Breach of Fiduciary Duties
### Against the Individual Defendants

88.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

89.     The Individual Defendants owed the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

90.     The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

91.     The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to guide the truthful dissemination of Company news to the investing public and to the Company's shareholders, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures, and otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and

deficiencies described above. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

92.      As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

93.      Plaintiff, on behalf of Gatos, has no adequate remedy at law.

## COUNT II

### Claim for Unjust Enrichment
### Against the Individual Defendants

94.      Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

95.      By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Gatos.

96.      The Individual Defendants were unjustly enriched by their receipt of bonuses, stock options, or similar compensation from Gatos that was tied to their performance or to the artificially inflated valuation of Gatos.

97.      Plaintiff, as a stockholder and representative of the Company, seeks restitution from the Individual Defendants, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by the Individual Defendants as a result of their wrongful conduct and fiduciary breaches.

98.     As a direct and proximate result of the Individual Defendants' misconduct, the Company has suffered significant damages, as alleged herein.

99.     Plaintiff, on behalf of Gatos, has no adequate remedy at law.

### COUNT III

**Claim for Violations of § 10(b) of the Exchange Act and
Rule 10b-5 Against the Individual Defendants**

100.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

101.    The Individual Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

102.    The Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the materially false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

103.    The Individual Defendants violated Section 10(b), of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (iii) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated.

104.    The Individual Defendants acted with scienter because they: (i) knew that the public documents and statements issued or disseminated in the name of Gatos were materially false and misleading; (ii) knew that such statements or documents would be issued or disseminated to the

investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws.

105.    The Individual Defendants by virtue of their receipt of information reflecting the true facts of Gatos, their control over, and/or receipt and/or modification of Gatos's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Gatos, participated in the fraudulent scheme alleged herein.

106.    As a result of the foregoing, the market price of Gatos common stock was artificially inflated during the relevant time period. In ignorance of the falsity of the statements, Plaintiff relied on the statements described above and/or the integrity of the market price of Gatos common stock in purchasing Gatos common stock at prices that were artificially inflated as a result of these false and misleading statements and were damaged thereby.

107.    In addition, as a result of the wrongful conduct alleged herein, the Company has suffered significant damages, including the costs and expenses incurred in defending itself in the Securities Action and reputational harm. The Individual Defendants, through their violation of Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5, have exposed the Company to millions of dollars in potential class-wide damages in the Securities Action.

### COUNT IV

**Claim for Contribution under § 11(f) of the Securities Act and
§ 21D of the Exchange Act Against the Individual Defendants**

108.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

109.    As a result of the misconduct alleged above, the Company is a defendant in the Securities Class Action, in which it is a joint tortfeasor in claims brought under Sections 11 and 15 of the Securities Act.

110.    Federal law provides Gatos with a cause of action against other alleged joint tortfeasors under Section 11(f) of the Securities Act.

111.    The plaintiffs in the Securities Class Action allege that the Company's Registration Statement, filed with the SEC in connection with its IPO, contained untrue statements of material facts and omitted to state material facts necessary to make the statements not misleading.

112.    Gatos is the registrant for the IPO, and the Individual Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

113.    As issuer of the shares, Gatos is strictly liable to the plaintiffs in the Securities Class Action for the misstatements and omissions alleged therein.

114.    The plaintiffs in the Securities Class Action allege that none of the defendants named therein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and not misleading.

115.    The Individual Defendants, because of their positions of control and authority as officers and directors of Gatos, were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of Gatos, including the wrongful acts complained of herein and in the Securities Class Action.

116.    Accordingly, the Individual Defendants are liable pursuant to Section 11(f) of the Securities Act (15 U.S.C. § 77k(f)(1)) which creates a private right of action for contribution, and Section 21D of the Exchange Act (15 U.S.C. § 78u-4(f)) which governs the application of a private right of action for contribution arising out of violations of the Securities Act.

117.    Gatos is entitled to receive all appropriate contribution or indemnification from the Individual Defendants.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: December 8, 2023

**RIGRODSKY LAW, P.A.**

OF COUNSEL:

By: */s/ Seth D. Rigrodsky*

**GRABAR LAW OFFICE**
Joshua H. Grabar
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (267) 507-6085
Email: jgrabar@grabarlaw.com

Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
Herbert W. Mondros (#3308)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Email: sdr@rl-legal.com
gms@rl-legal.com
hwm@rl-legal.com

*Attorneys for Plaintiff Dr. Damian D. Maharaj*